UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

COLLEEN MCKENZIE,

     Plaintiff,

v.                        Case No.:  2:22-cv-763-KCD

KILOLO KIJAKAZI, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## ORDER

Plaintiff Colleen McKenzie sues under 42 U.S.C. § 405(g) to challenge the Commissioner of Social Security's decision denying her application for disability insurance benefits. (*See* Doc. 1.)[1] For the reasons below, the Commissioner's decision is affirmed.

## I. Background

The procedural history, administrative record, and law are summarized in the parties' briefs (Docs. 20 22, 23) and not fully repeated here. McKenzie filed for benefits in 2020, claiming she could no longer work because of various medical conditions. (Tr. 11.) Her application was denied initially and again

---

[1] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

upon reconsideration. She then requested further review before an administrative law judge ("ALJ").

Following a hearing, the ALJ found that McKenzie had severe impairments of left knee degenerative joint disease, status post partial replacement, headaches, right shoulder degenerative joint disease, and chronic pain syndrome. (Tr. 15.) McKenzie also had right wrist/hand pain and attention deficit hyperactivity disorder, which the ALJ determined were non-severe impairments. (Tr. 16-17.) Even with those conditions, the ALJ found McKenzie had the residual functioning capacity ("RFC") to:

> lift 10 pounds occasionally; sit for six hours in an eight-hour work day; stand and/or walk for two hours in an eight-hour workday, with normal breaks; never climb ladders, ropes or scaffolds; occasionally climb ramps or stairs; occasionally balance, kneel, crouch or crawl; frequently stoop; occasionally bilaterally reach overhead; frequently bilaterally reaching forward and to the side; frequently bilaterally push or pull; no limitations regarding handling or fingering up to the external limitations of sedentary work; never be exposed to extreme temperatures; occasional exposure to moderate wetness or humidity; moderate exposure to noise; occasional exposure to moderate levels of vibration or environmental irritants; avoid all exposure to unprotected moving mechanical parts or unprotected heights; no exposure to strobe or bright lights.

(Tr. 22.)[2]

---

[2] An individual claiming disability benefits must prove she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's

After considering the RFC and testimony from a vocational expert ("VE"), the ALJ determined that McKenzie could perform her past relevant work as a patient scheduler. (Tr. 31-32.) Because McKenzie could perform her past relevant work, the ALJ found her not disabled as that term is defined in this context. (Tr. 32.) McKenzie then exhausted her administrative remedies, and this lawsuit timely followed. (Doc. 1.)

## II. Legal Standard

Review of the Commissioner's (and, by extension, the ALJ's) decision denying benefits is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a mere scintilla but less than a preponderance. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The Supreme Court recently explained, "whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

---

RFC, age, education, and work experience." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

When determining whether the ALJ's decision is supported by substantial evidence, the court must view the record as a whole, considering evidence favorable and unfavorable to the Commissioner. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). But the court may not reweigh the evidence or substitute its judgment for that of the Commissioner. And even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Finally, "[u]nder a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports [her] position; [she] must show the absence of substantial evidence supporting the ALJ's conclusion." *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017).

### III. Discussion

McKenzie argues six issues on appeal. First, she claims the ALJ erred in failing to properly identify her past relevant work. (Doc. 20 at 14-18.) Second, she claims given her advanced age and the lack of transferable skills, she would be disabled if found unable to do her past relevant work. (Doc. 20 at 18-20.) Third, McKenzie claims the ALJ erred in failing to find her mental impairments severe, and regardless of the severity, in failing to include the relevant limitations in the RFC. (Doc. 20 at 20-27.) Fourth, the ALJ erred in finding that she had no limitations in fingering or handling. (Doc. 20 at 27-33.)

Fifth, the ALJ erred in evaluating a physical therapy examination and its opinions. (Doc. 20 at 33-36.) Sixth, the ALJ erred in failing to find her vision impairment severe, and in failing to properly reflect the vision impairment in her RFC. (Doc. 20 at 36-41.) The Court addresses each issue in turn.

### A. Past Relevant Work

McKenzie first claims the ALJ erred in identifying her past relevant work as a patient scheduler, which she refers to as a hospital admitting clerk. She asserts that the tasks she performed in her past work are inconsistent with the job description of a hospital admitting clerk and instead more closely align with the job description of an appointment clerk. *Compare* DOT § 205.362-018 (hospital admitting clerk) *with* DOT § 237.367-010 (appointment clerk).

McKenzie did not challenge the VE's alleged misclassification of her past work as a patient scheduler during the hearing. This effectively waived her argument. *See Vickery v. Comm'r of Soc. Sec.*, No. 5:21-CV-122-PRL, 2022 WL 16555990, at *3 (M.D. Fla. Sept. 23, 2022); *see also New v. Comm'r of Soc. Sec.*, No. 5:12-CV-211-OC-18PRL, 2013 WL 3804846, at *3 (M.D. Fla. July 8, 2013) ("As an initial matter, the Commissioner correctly notes that the Plaintiff did not raise this issue to the ALJ, nor did her attorney object to the VE's testimony identifying Plaintiff's prior work as a housekeeper as past relevant work. Unfortunately for Plaintiff, because she failed to raise this issue to the ALJ or

even object to the VE's testimony, the ALJ was not obligated to specifically address the concerns—or rather, arguments—that Plaintiff now raises."); *Whittemore v. Comm'r of Soc. Sec.*, No. 3:09-CV-1242-J-MCR, 2011 WL 722966, at *5 (M.D. Fla. Feb. 23, 2011) (finding that where the plaintiff did not raise the issue to the ALJ as to whether her prior job as a real estate agent qualified as substantial gainful activity and did not object to the VE's "past relevant work summary," which included the job of real estate agent, that the ALJ was not required to specifically discuss his reasons for concluding that the plaintiff's past work as a real estate agent qualified as substantial gainful activity). Thus, without an objection or other reason to doubt his credibility, the VE's expertise provides substantial evidence to support reliance on his testimony that McKenzie could do her past relevant work as she actually performed it. *Curcio v. Comm'r of Soc. Sec.*, 386 F. App'x 924, 926 (11th Cir. 2010).

### B. Medical Vocational Rule 201.06

The analysis above likewise disposes of McKenzie's second argument. She claims that because she is of advanced age and she could not perform her past relevant work as a patient scheduler, and no transferable skills were identified, the ALJ erred in not concluding she was disabled pursuant to Medical Vocational Guidelines (grids) Rule 201.06.

McKenzie waived her argument that the ALJ misclassified her past relevant work as a patient scheduler, and the VE's expertise provides substantial evidence to support the ALJ's reliance on his testimony. Although McKenzie argues that she is disabled pursuant to the Medical Vocational Guidelines used in step five of the sequential evaluation process, "those guidelines apply *only* if the administrative law judge determines that a claimant is incapable of performing [her] past relevant work at step four of the evaluation." *Delmonte v. Comm'r, Soc. Sec. Admin.*, 585 F. App'x 774, 776 (11th Cir. 2014). Thus, because the ALJ properly determined that McKenzie could return to her past relevant work at step four of the sequential evaluation process, the ALJ did not err in failing to find McKenzie disabled pursuant to the Medical Vocational Guidelines. *See Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (finding claimant's argument that the ALJ should have applied the grids fails because the grids are only applied if the claimant is unable to perform his or her vocationally relevant past work).

### C. Mental Impairments

Next up, McKenzie argues the ALJ erred in failing to find her mental impairments severe at step two of the sequential evaluation process. She further claims that, regardless of the severity of her mental impairments, the ALJ erred in failing to include the relevant limitations in the RFC at step four.

### 1. Step Two

At step two, an ALJ considers the severity of a claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). When, as here, the claimant alleges a mental impairment "the ALJ makes determinations as to the claimant's abilities in four broad functional areas known as 'Paragraph B' criteria. The four areas consider the claimant's ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage herself." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1324-25 (11th Cir. 2021) (citing 20 C.F.R. § 404.1520a(c)(3)). The ALJ rates the claimant's limitations in each area as none, mild, moderate, marked, or extreme and must explain why. *Id.* at 1325. Ultimately, "to find the presence of a [severe] mental impairment, the ALJ must find that a claimant has an 'extreme' limitation in one of the four functional areas or a 'marked' limitation in two." *Id.*

Finally, important for present purposes, an ALJ need not identify every severe impairment to satisfy step two. *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014); *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010) ("Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe."). "[S]tep two of the sequential evaluation acts as a 'screening' or 'filter' to eliminate groundless claims. Accordingly, we have recognized that step two

requires only a finding of 'at least one' severe impairment to continue on to the later steps." *Tuggerson-Brown*, 572 F. App'x at 951. In other words, so long as the ALJ identifies any severe impairment at step two, there is no reversible error because that is enough for the claimant "to continue on to the later steps." *Id.*; *see also Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) ("[T]he finding of any severe impairment, whether or not it qualifies as a disability ... [,] is enough to satisfy the requirement of step two.").

Here, the ALJ found that McKenzie had several severe physical impairments. (Tr. 15.) As for her alleged mental impairments, the ALJ found that McKenzie's claims of anxiety were unsupported as a medically determinable impairment during the relevant timeframe. (Tr. 17.) The ALJ further found McKenzie's attention deficit hyperactivity disorder was a medically determinable impairment that did not rise to the "severe" level because it did not cause more than a minimal limitation on McKenzie's ability to perform basic mental work activities. (Tr. 17.) And finally, the ALJ found that McKenzie had mild limitations in three of four areas of the Paragraph B mental functioning. (Tr. 17-18.)

To support these findings, the ALJ first cited function reports and pain questionnaires completed by McKenzie in which she conceded that she could prepare light meals, complete light house cleaning, take care of her personal needs, drive, shop, and participate in social activities. (Tr. 272-273, 276, 279,

292-93.) McKenzie reported that she follows instructions well, got along with authority figures, could pay bills, and handle her savings account. (Tr. 280-81, 305, 307.) The ALJ is clearly authorized to consider the plaintiff's activities of daily living in evaluating allegations of disability. *See Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. § 404.1529(c)(3)(i).

The ALJ further cited to medical records that show essentially normal psychiatric findings. For instance, Dr. Voci's notes indicate that McKenzie denied having any issues with depression and anxiety and that she had normal attention and concentration. (Tr. 1331-32, 1344-45.) Dr. Alrais found no overt psychiatric disease, major depression, cognitive impairment, or memory, and noted that McKenzie reported improvement of her symptoms with Adderall. (Tr. 1353, 1360.) Dr Barclay-Shell's examination found normal findings. (Tr. 1439-43.) Dr. Maniar found that McKenzie did not have anxiety, and her memory and attention were intact. (Tr. 1472-73.) He further found no limitations in McKenzie's ability to follow, carry out, remember, and understand simple instructions, use judgment, respond to work situations, and deal with changes in a work setting. (Tr. 1580, 1603.) Dr. Mahaney similarly reported normal findings regarding McKenzie's mental status and noted that she could function well. (Tr. 1478, 1482.) Finally, Dr. Sachs specifically found no depression or anxiety and determined that McKenzie's insight and judgment were good. (Tr. 1527, 1536, 1542.)

Considering the above, the ALJ had substantial evidence to support his findings and his conclusion that McKenzie's mental impairments were non-severe at step two. And regardless, any step-two error would be harmless, as the ALJ deemed several of claimant's other medical impairments to be severe and proceeded through the sequential process. *See, e.g.*, *Tippenhaver v. Kijakazi*, No. 20-CV-62555, 2022 WL 3344625, at *4 (S.D. Fla. Aug. 12, 2022) (upholding ALJ's decision that failed to address the claimant's shoulder impairment at step two because "he found [the claimant] to have at least one severe impairment and, consequently, proceeded to the next step of the sequential evaluation").

### 2. Step Four

At step four, the ALJ assesses a claimant's RFC and ability to do past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv). The RFC, defined as the most the claimant can still do despite her limitations, is based on an evaluation of all the relevant evidence in the record. *See id.* §§ 404.1520(e), 404.1545(a)(1) and (a)(3); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). Put simply, the ALJ is "required to consider all impairments, regardless of severity, in conjunction with one another" when building the RFC. *Tuggerson-Brown*, 572 F. App'x at 951. Thus, when an ALJ finds mild mental limitations at step two, he must have a "real discussion of how the mental condition affected [the claimant's] RFC." *Schink v. Comm'r of Soc. Sec.*, 935

F.3d 1245, 1269 (11th Cir. 2019). "If an ALJ fails to address the degree of impairment caused by the combination of physical and mental medical problems, the decision that the claimant is not disabled cannot be upheld." *Id.*

According to McKenzie, the ALJ was required to include mental functional limitations in the RFC since there were findings of "mild" limitations in the Paragraph B criteria. (*See* Doc. 20 at 26-27.) Not so. It appears that McKenzie conflates (1) limitations in the Paragraph B criteria, with (2) limitations in a claimant's RFC. The limitations in the Paragraph B criteria help the ALJ determine the severity of a claimant's mental impairments or whether a claimant meets a listing, while limitations in the RFC help the ALJ determine the level of work that a claimant can perform. *Compare* 20 C.F.R. § 404.1520a, with 20 C.F.R. § 404.1545. While some precedent suggests that a finding of a moderate limitation or severe impairment at steps two or three may require an ALJ to include such limitations in the RFC, or at least explain the decision to not include the limitations, here, the ALJ never found McKenzie's mental impairments caused work-related limitations. For example, in *Winschel*, the Eleventh Circuit reasoned:

> [T]he ALJ determined at step two that Winschel's mental impairments caused a moderate limitation in maintaining concentration, persistence, and pace. But the ALJ did not indicate that medical evidence suggested Winschel's ability to work was

> unaffected by this limitation, nor did he otherwise implicitly
> account for the limitation in the hypothetical.

*Winschel*, 631 F.3d at 1181. Along the same lines, the Eleventh Circuit determined an ALJ's hypothetical question to a VE was improper where the ALJ found a claimant's bipolar disease was a severe impairment that caused significant limitations in the claimant's ability to perform work activities but included no limitations associated with that illness. *Samuels v. Acting Comm'r of Soc. Sec.*, 959 F.3d 1042, 1047 (11th Cir. 2020).

Those decisions are distinguishable from this case. Here, the ALJ found only mild impairments. As such, he was not required to include any mental limitations in the RFC. *See Williams v. Soc. Sec. Admin.*, 661 F. App'x 977, 979-80 (11th Cir. 2016); *Mielbeck v. Comm'r of Soc. Sec.*, No. 2:20-cv-987-JLB-MRM, 2022 WL 4285873, at *4 (M.D. Fla. Sept. 16, 2022) (finding the ALJ did not err in failing to include mental limitations in the RFC where there were no more than mild limitations in the ability to perform mental work activities).

Moreover, the Court is satisfied that substantial evidence supports the ALJ's determination that McKenzie's mental health impairments did not cause any work-related limitations. At step four, the ALJ considered and found persuasive the State agency consultants' opinions that McKenzie's mental impairments were non-severe and that she only exhibited mild limitations in the paragraph B criteria. (Tr. 28 (citing Tr. 111-28, 130-138.)) The ALJ found

these opinions to be consistent with the essentially normal objective findings of Drs. Voci and Maniar and ARNP Kaiser, who all indicated essentially normal psychiatric findings. (*Id.* (citing Tr. 1315-46, 1454-66, 1467-77, 1492-1501, 1557-83, 1592-1601.)) He further found the opinions to be generally consistent with the normal objective psychiatric findings of Dr. Mahaney and McKenzie's primary care providers. (*Id.* (citing Tr. 1439-43, 1478-87, 1523-45.)) Thus, the ALJ had a "real discussion" of McKenzie's mental functioning as required under Eleventh Circuit precedent.

Given the record outlined above, substantial evidence supports the ALJ's decision not to incorporate mental limitations in the RFC. *See Faircloth v. Comm'r of Soc. Sec.*, No. 6:21-cv-782-EJK, 2022 WL 2901218, at *2 (M.D. Fla. July 22, 2022) ("[A]n ALJ is not required to include mental limitations in the RFC finding merely because he identified mild mental limitations in the PRT criteria.").

### D. Fingering and Handling

Turning to her physical impairments, McKenzie claims the ALJ erred in finding that she had no limitations with fingering and handling despite her complaints to Drs. Sachs and Mahaney and the limitations identified by Dr.

Maniar.[3] The ALJ further erred, according to McKenzie, by failing to reflect her fingering and handling limitations in the RFC.

Starting with Dr. Sachs, the ALJ noted that she diagnosed McKenzie with right wrist pain in February 2021, but discontinued the diagnosis by June 2021. (Tr.16.) In fact, Dr. Sachs noted in December 2021 that McKenzie's wrist pain was better. (Tr. 1537.) The ALJ therefore found that the injury was acute, not chronic, and did not substantiate a finding of any limitations lasting more than one year. (Tr. 16.)

As for Drs. Mahaney and Maniar, McKenzie fails to acknowledge that the ALJ considered their opinions regarding fingering and handling limitations and rejected them, finding them to be inconsistent with the objective evidence of record, including their own examinations of McKenzie, which were essentially normal, as well as examinations by Drs. Voci, Alrais, Barclay-Shell, Sachs, and ARNP Kaiser. (Tr. 29-30 (citing Tr. 1342-46, 1355-59, 1439-43, 1458-64, 1470-75, 1478-87, 1493-1501, 1523-45, 1577-83, 1586-1605, 1605-08.)) The ALJ's decision, read as a whole, supports this conclusion. *See Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("[I]t is proper to read the ALJ's decision a whole[.]"); *Jones v. Barnhart*, 364 F.3d 501, 505 (3d

---

[3] McKenzie also refers to the physical therapy examination/functional capacity evaluation. (Doc. 20 at 29.) For reasons explained later in this report, the ALJ's rejection of the physical therapist's opinion is supported by substantial evidence.

Cir. 2004) (holding that the ALJ's decision contained a sufficient explanation for the step three finding because the ALJ is not required to "use particular language or adhere to a particular format"). Among other evidence, the ALJ discussed the treatment records of ARNP Kaiser showing that McKenzie reported having a previously unremarkable EMT and that, upon objective examination, she had 5/5 motor strength in her bilateral upper and normal musculoskeletal range of motion. (Tr. 24, 1461-62.) Also of note, the ALJ discussed Dr. Maniar's objective findings of 5/5 muscle strength in all extremities, intact coordination, and normal range of motion, as well the same findings upon follow up several months later. (Tr. 24-25, 1473-74, 1498-99, 1580-81, 1596.) The ALJ noted Dr. Mahaney's findings upon examination of her upper extremities including 5/5 muscle strength, normal reflexes and intact sensations. (Tr. 25, 1478-80.) He also noted Dr. Sach's finding of normal motor strength. (Tr. 26, 1533, 1536-37, 1542-53.) Physical examinations repeatedly showed McKenzie's grip strength, wrist strength and flexion, and finger flexors strength was 5/5 with normal muscle tone. (Tr. 1319, 1327, 1332, 1479, 1596.) Finally, the ALJ's findings are also supported by the opinions of the state agency medical consultants, who imposed no manipulative limitations on McKenzie as to handling, fingering, or feeling. (Tr. 122, 135.)

At bottom, McKenzie fails to show that the ALJ erred in finding that her wrist impairment was not severe and in failing to include fingering and handling limitations in the RFC.

### E. Physical Therapy RFC Rejection

McKenzie next argues the ALJ did not properly consider the physical therapy examination and corresponding RFC evaluation that limited her significantly more than the ALJ found.

Thomas Hafer, a licensed physical therapist, found McKenzie has very limited functioning. For instance, he found that she was unable to stand more than five to eight minutes, walk more than three minutes, and sit more than twenty minutes due to pain. (Tr. 1502, 1584.) He noted that McKenzie had left arm pain that increased with activity. (*Id.*) Hafer also opined that "[b]alance issues makes patient vulnerable for falls, especially with carrying objects." (Tr. 1503, 1585.) He ultimately concluded that McKenzie was unable to work unless it was an extremely light duty sitting job that allows for breaks every twenty minutes. (Tr. 1502-03, 1584-85.)

The ALJ recognized the extremely limited physical therapy examination findings, which seemed to be based on McKenzie's subjective complaints, and found that the "essentially normal objective findings by her treating providers during the relevant period" eliminated the persuasiveness of Hafer's opinions. (Tr. 27 (citing Tr. 1342-46, 1355-59, 1439-43, 1458-64, 1470-75, 1478-87, 1493,

1523-44, 1577-85, 1592-1601.)) The ALJ later discussed the evaluation from

the physical therapist in more detail:

> The undersigned does not find persuasive the opinion of the physical therapist, Thomas Hafer, in which he opined that the claimant was unable to work at this time unless an extremely light-duty sitting job that allows breaks every 20 minutes and that the claimant has balance issues that makes her vulnerable for falls, especially with carrying objects. (Exhibits 12F/1-2, 16F/1-2). His opinion is not phrased in vocational relevant terms. Moreover, his opinion is internally inconsistent with his own objective findings in which he found that the claimant had a Tineeti [*sic*] test of 25/28 which is inconsistent with the claimant being more than a low risk for falls. (Exhibits 12F/1-2, 16F/1-2). His opinion is also generally inconsistent with the generally essentially normal objective findings by claimant's treating primary care providers, Dr. Alrais, Dr. Barclay-Shell, and Dr. Sachs, as above. (Exhibits 5F/9-13; 6F/5-9; 14F/1-22). Finally, his opinion is generally inconsistent with the essentially normal objective findings by Dr. Mahaney, as above, and even inconsistent with Dr. Mahaney's prescribing narcotic medication and his diagnoses. (Exhibit 9F/1-10). Accordingly, the undersigned does not find this opinion persuasive.

(Tr. 30.)

The ALJ's explanation is sufficient. A physical therapist is not an

acceptable medical source and, therefore, their opinions are not entitled to any

special significance. *Garcia v. Comm'r of Soc. Sec.*, No. 2:19-CV-877-FTM-

MRM, 2021 WL 1037856, at *10 (M.D. Fla. Mar. 18, 2021). But even setting

that aside, the Court is satisfied the ALJ properly considered and rejected the

opinions. *See Matthew J. S. v. Comm'r of Soc. Sec.*, No. 6:20-CV-1606 (GLS),

2022 WL 957974, at *3 (N.D.N.Y. Mar. 30, 2022) (explaining the ALJ "was

required to articulate how persuasive he found [a physical therapist's] opinion, specifically noting the supportability and consistency").

The ALJ noted that Hafer examined McKenzie on a single occasion and for only sixty minutes. (Tr. 25-26.) He explained that Hafer's finding that McKenzie was at a high risk for falls was internally inconsistent and not supported by the objective findings of the Tinetti balance test that put her at a low risk. (Tr. 30 (citing Tr. 1502-03, 1584-85).) The ALJ then thoroughly summarized McKenzie's medical history, noting the objective findings of ARNP Kaiser, Drs. Maniar, Mahaney, Alrais, Barclay-Shell, and Sachs, including normal gait, balance, stance, range of motion, motor strength, and muscle strength. (Tr. 24-26, 1440-41, 1461-62, 1473-74, 1478-81, 1498-99, 1527, 1536, 1542-43, 1580-81 1596.) The ALJ's discussion thus addressed the required factors (supportability and consistency) and was based on substantial evidence. *See Thaxton v. Kijakazi*, No. 1:20-CV-00616-SRW, 2022 WL 983156, at *8 (M.D. Ala. Mar. 30, 2022) ("[T]he ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source himself and whether the opinion is consistent with other evidence of record."). Accordingly, because substantial evidence supports the ALJ's finding that Hafer's evaluation of McKenzie was not persuasive, she fails to show error.

### F. Vision Impairment

Last, McKenzie argues the ALJ erred by not finding her vision impairment severe and in failing to include her vision limitations in the RFC.

At step two, the ALJ found that McKenzie's alleged loss of visual acuity was not established by objective medical evidence. (Tr. 19.) The ALJ noted the lack of medical signs or laboratory findings showing the existence of the alleged impairment. (Tr. 19.) Then, at step four, the ALJ acknowledged ARNP Kaiser's finding of fully intact visual field on the right eye with some diminishment on the left. (Tr. 24, 1461.) Further, the ALJ noted Dr. Maniar's finding that McKenzie had some diminished visual field on the left eye, specifically difficulty seeing out of the left side, which was unchanged since cyst removal surgery in 2006. (Tr. 24-25, 1470, 1473.) The ALJ ultimately concluded that, although it was not established by any objective testing such as a Humphrey's visual field test, McKenzie's diminished left visual field did not create more than a minimal limitation on her ability to perform work related activities.

Substantial evidence supports the ALJ's treatment of McKenzie's vision issues. McKenzie testified that she was able to use an iPad, did not wear glasses, and was told she did not need to do so. (Tr. 91, 98.) She reported that she could drive and read for enjoyment about 90 minutes a day. (Tr. 278-79, 293-94, 305-06.) As indicated by the ALJ, absent from the medical history are any records specifically for vision treatment. Meanwhile, records from

McKenzie's physicians who treated her for other ailments refer to her vision as unremarkable. Dr. Alrais found no focal deficits, and Dr. Barclay-Shell specifically reported no loss or diminished vision. (Tr. 1358, 1440.) On several occasions, Dr. Maniar reported McKenzie's eyes were negative for visual disturbance or diplopia. (Tr. 1460-61, 1472-73, 1595.) Dr. Sachs reported she had no vision changes with no limitations in her eyes. (Tr. 1527, 1535-36, 1542.) The ALJ's findings are also supported by the findings of the state agency medical consultants, who found no visual limitations regarding McKenzie's RFC. (Tr. 122, 135.)

Considering the evidence above, the ALJ did not err by treating McKenzie's visual impairment as non-severe. It also follows that McKenzie has not demonstrated that the ALJ erred by failing to including any visual limitations in the RFC.

## IV. Conclusion

Substantial evidence supports the ALJ's findings, and McKenzie has failed to show error. Accordingly, the Court **AFFIRMS** the Commissioner's decision and directs the Clerk to enter judgment for the Commissioner and against Colleen McKenzie and close the file.

**ORDERED** in Fort Myers, Florida on October 2, 2023.

Kyle C. Dudek
United States Magistrate Judge